845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nelson E. MOHR, Plaintiff-Appellant,
v.
Otis R. BOWEN, M.D., Secretary of Health and Human Services,
Defendant- Appellee.
 No. 87-1534.
 United States Court of Appeals, Sixth Circuit.
 April 21, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Nelson Mohr, appeals from the denial of social security disability and supplemental income benefits. The Secretary concluded that Mohr retained the residual functional capacity to perform his past relevant work. On appeal to the district court, the matter was referred to a magistrate who recommended that the case be remanded to the Secretary for consideration of a closed period of benefits. The district court rejected the magistrate's recommendation and granted the Secretary's motion for summary judgment.
 
 I.
 
 2
 Mohr, a high school graduate, had worked at Walker Manufacturing Company from December, 1953, to July, 1981, when the plant closed. During his tenure at Walker, Mohr had worked at a number of jobs, including assembler, machine operator, semi-truck driver, lift-truck operator, and shipping and receiving clerk. After Walker closed, Mohr secured temporary employment at Jackson Manufacturing and Design where he worked as a milling machine and shaping operator. This job lasted seven or eight months. Mohr was very depressed over the loss of employment.
 
 
 3
 Plaintiff was an alcoholic and, by mid-1984, was drinking sixteen to twenty-four cans of beer a day. On July 10, 1984, he was arrested for the third time for drunk driving and lost his license. On July 14, 1984, he was admitted to a residential alcoholism treatment center. He was very depressed on admission. His drinking and loss of work had exacerbated marital problems at home and he had become antagonistic and aggressive. He was discharged from treatment on August 10, 1984, but with a poor prognosis.
 
 
 4
 Mohr's depression continued and culminated in a suicide attempt on December 24, 1984, when he shot himself twice with a shotgun, inflicting wounds to the left chest and upper abdomen. Although in critical condition and near death, Mohr survived the gunshot wounds and several subsequent surgeries. While hospitalized, plaintiff also underwent psychiatric and neurological evaluations. Plaintiff was discharged from the hospital on February 21, 1985. Both his physical and mental condition had improved considerably.
 
 
 5
 While still hospitalized, Mohr had filed for disability benefits. In response to state agency inquiries, several doctors filed reports relating to Mohr's condition and prognosis. The medical consensus can be fairly summarized by stating that the residual physical effects of the gunshots and subsequent surgeries would not be great from a medical standpoint, but that Mohr continued to have considerable, and perhaps devastating, psychiatric problems and was still potentially suicidal. Dr. Muhich, who was the most knowledgeable about Mohr's mental problems, felt that he had a major disorder and that his prognosis was guarded.
 
 
 6
 On April 15, 1985, the state agency sent Mohr to a consultative psychiatric examination to be performed by Dr. Wille. Dr. Wille's diagnosis was former alcohol addiction of the uninterrupted type, an atypical organic brain disorder (mild) secondary to chronic alcoholism and associated with mild cerebral atrophy, and a major single episode affective disorder in remission, characterized by a suicide attempt. The prognosis was fair to good, with improvement being shown since he stopped drinking.
 
 
 7
 Mohr was readmitted to the hospital on April 26, 1985, for the removal of infected costal cartilage. There was one area of skin grafts where no proper healing had been taking place but, in general, Mohr's physical and mental state appeared to be improving. By July of 1985, plaintiff's condition had again deteriorated, however, and he was admitted to the psychiatric unit at W.A. Foote Memorial Hospital with a diagnosis of "acute psychotic depression with suicidal intent--emergent." Mohr told his doctors that "something snapped inside me" and he was again contemplating suicide. Dr. Muhich again treated Mohr and diagnosed a major depressive episode. It is not clear from the record how long Mohr remained hospitalized, but Dr. Muhich estimated three weeks and then discharge to an out-patient program. We do know that Mohr was still hospitalized on August 21, 1985, however, because on that date Dr. Muhich wrote the following letter:
 
 
 8
 Enclosed is the original psychiatric history on the subject. He has never fully recovered from the depression illness. On July 25, 1985 he was rehospitalized because of the depression and remains in the hospital at this time. He has already been incapacitated for 9 months and as further surgery is contemplated the overall disability will easily exceed the 12 months you mentioned in your letter.
 
 
 9
 Subsequent to this letter being written and up to the time of plaintiff's hearing before an administrative law judge (ALJ) on March 19, 1986, there are no additional medical records of significance. However, on December 3, 1985, the Michigan Rehabilitation Services sent Mohr a letter informing him that they were closing his case due to his "severe medical problems." The letter further stated that "[a]t such time as your physician feels you can actively participate in a rehabilitation program, please feel free to contact us."
 
 II.
 
 10
 At the hearing before the ALJ, much of the focus was on Mohr's present condition and activities. Although it is clear that Mohr still has significant physical and mental problems, we nonetheless conclude, given our limited standard of review, that substantial evidence supports the Secretary's decision that Mohr, as of the hearing, could perform his past relevant work. As with many of the claimants involved in these appeals, there is serious doubt as to the likelihood of plaintiff finding an employer eager to hire him, but that is not the issue before us.
 
 
 11
 On the closed period of disability, however, we find that there is little or no evidence supporting the Secretary's findings. A claimant's impairment must meet the twelve-month durational requirement before he can be found disabled, but the record here demonstrates a period of disability of at least that length. Nine months after Mohr almost died of his self-inflicted gunshot wounds, we find him again hospitalized for a month or longer due to his mental problems and suicidal propensities. We also find him at that point in time facing additional surgery. The ALJ's reliance on consultative psychiatric opinions which painted a relatively rosy prognosis simply was not justified in the face of what was going on with the plaintiff on a day-to-day basis when he was not hospitalized.
 
 
 12
 There is no doubt that this claimant, on any given day, could do more physical activity than many claimants who pass before the ALJ. However, the record reveals that abrupt changes could and did quickly follow these relatively normal periods and rendered the plaintiff not only incapable of working but also incapable of even performing basic daily activities.
 
 
 13
 Accordingly, we AFFIRM the decision of the Secretary that, as of March 19, 1986, plaintiff was not disabled within the meaning of the Social Security Act, but REMAND for consideration of a closed period of disability commencing December 24, 1984, and terminating at some point on or before March 19, 1986.